## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

MEAGHIN JORDAN, Individually;
JONATHAN JORDAN, Individually; and
MEAGHIN AND JONATHAN JORDAN, on
behalf of their minor son, Braylon Jordan                                    PLAINTIFF

VS.                                              CIVIL ACTION NO.: 3:15CV821-CWR-LRA

MAXFIELD & OBERTON HOLDINGS,
LLC; CRAIG ZUCKER; GREAT
AMERICAN E & S INSURANCE
COMPANY; INDIAN HARBOUR
INSURANCE COMPANY; MARKEL,
d/b/a Evanston Insurance Company; and
SCOTTSDALE INSURANCE COMPANY                                                 DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter came before the Court for the limited purpose of determining whether Item

Numbers 43 and 59 on the Scottsdale Privilege Log that was attached to Maxfield & Oberton's

Motion to Compel [Doc. #143, Exhibit C] are protected by the attorney-client privilege.  Those

items are described on the Privilege Log as follows:

> 43.    Email - Internal discussion of Buckey Ball lawsuits, dated January 9, 2014, from
>        David Verona to Rodney Ball.  Protected as: Attorney-client; irrelevant to notice
>        issue; irrelevant to Braylon Jordan.

> 59.    Email - Internal discussion of various notices of occurrence, dated January 7, 2014,
>        from David Verona to Terry Bolin, Rodney Ball, and Geoffrey Borger.  Protected as:
>        Attorney-client, work product; confidential and/or proprietary information related
>        to persons not parties to this litigation; irrelevant to notice issue.

On May 18, 2016, the Plaintiffs took a deposition pursuant to Fed. R. Civ. P. 30(b)(6) of

Heather Arias, a Claims Consultant with Defendant Scottsdale Insurance Company.  According to Ms. Arias, Geoffrey Borger was, at that time, a Claims Manager with Scottsdale.  Terry Bolin was an Associate Vice President of Claims for Scottsdale, Rodney Ball was either a Claim Specialist or a Senior Claim Specialist for Scottsdale, and David Verona was, like Ms. Arias, a Claims Consultant for Scottsdale.  According to Ms. Arias, none of these individuals provided legal advice or counsel to Scottsdale with respect to coverage for the claims made in this lawsuit.  Ms. Arias also testified that Scottsdale did not rely on advice from attorneys in determining whether there was coverage for those claims.

In contrast, Scottsdale now argues that the two emails from Verona at issue here are protected by the attorney-client privilege.  "Mr. Verona is an attorney is addition to his role as a claims consultant, and SIC chose him to make certain legal analyses because, as has been held by Mississippi courts, attorneys are in the best position to make decisions with potential legal ramifications."  According to Scottsdale, the emails were generated because the company asked Verona "to provide an explanation of whether or not there may be legal responsibility on various Buckyball incidents."  Scottsdale claims that the request "required legal analysis" because Verona, as an attorney, "had to keep legal ramifications in his mind when making these analyses."

Jurisdiction in this case is based on diversity, so the existence of an attorney-client privilege depends on state law.  *In re Avantel, S.A.*, 343 F.3d 311, 323 (5th Cir. 2003).  In Mississippi, the privilege is provided by Miss. R. Evid. 502.  It protects "any confidential communication made to facilitate professional legal services to the client."  The burden of proving the existence of the privilege rests with the party asserting it.  *United States v. Harrelson*, 754 F.2d 1153, 1167 (5th Cir. 1985); *Baker Donelson Bearman Caldwell & Berkowitz, P.C. v. Seay*, 42 So. 3d 474, 494-95 (Miss.

2

2010).  Citing *Dunn v. State Farm Fire & Cas. Co.*, 122 F.R.D. 507, 509-10 (N.D. Miss. 1988), Scottsdale argues that the privilege applies even if the attorney is asked to do work that is not legal in nature.  "[W]hile in-house accountants or lay investigators could have been employed to investigate the events in question, neither would have brought to bear the same training, skills and background necessary to make the professional independent analysis and legal recommendations sought . . . ." *Id.* at 509.  The privilege extends to communications by and to corporate counsel. *Baptist Health v. BancorpSouth Ins. Services, Inc.*, 270 F.R.D. 268, 273 (N.D. Miss. 2010).

Maxfield & Oberton, also quoting *Dunn*, contend that the attorney-client privilege is construed "no more broadly than is necessary to effectuate its purpose."  122 F.R.D. at 509.  That purpose is to insure that a client fully informs his attorney of the facts necessary to enable that attorney "to provide sound legal advice." *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981). The communications that are protected by the privilege are only those that "are relevant to legal advice." *Wright v. Life Investors Ins. Co. of America*, 2010 WL 481003 at *1 (N.D. Miss. 2010). As the Mississippi Supreme Court has held, "Services which are strictly business or personal, do not enjoy the privilege." *Haynes v. Anderson*, 597 So. 2d 615, 621 (Miss. 1992).  Thus, where an attorney functions as a mere "scrivener," such as when preparing a deed, where no legal advice is required, there is no privilege. *Rogers v. State*, 266 So. 2d 10, 20 (Miss. 1972).

The application of the attorney-client privilege "is a fact question to be determined in light of the purpose of the privilege and guided by judicial precedents . . . ." *In re Grand Jury Subpoena*, 419 F.3d 329, 335 (5th Cir. 2005).  In making its determination, the Court has reviewed the two emails in question, which were submitted for *in camera* review.  In essence, Scottsdale's defense in this case is based upon its contention that there is no coverage under the "Second Layer Excess

3

Scottsdale Policy" for the Plaintiffs' claims because a claim was not made and reported within the applicable policy period of extended reporting period. In asserting that defense, Scottsdale relies upon the terms of that policy. Having reviewed the emails in question, it appears that Verona was asked to elaborate on Scottsdale's position. Ms. Arias testified under oath that Verona did not provide legal advice on the issue of coverage, nor did Scottsdale rely on legal advice from Verona in denying coverage. The emails substantiate her testimony.

Under Miss. R. Evid. 502, the attorney-client privilege requires both a lawyer and a client. In that context, "lawyer" is defined as "a person authorized . . . to practice law in any state or nation." A "client" is defined as a "corporation . . . to whom a lawyer renders professional *legal* services; or who consults a lawyer with a view to obtaining professional *legal* services from the lawyer." (Emphasis added.) Scottsdale has the burden of proving each of these elements. It is not clear whether Verona is actually authorized to practice law in the sense of being licensed by a particular bar. What is clear, however, is that, according to the uncontroverted testimony of Scottsdale's employee, Ms. Arias, he was not in the position of rendering legal services to Scottsdale, nor did Scottsdale consider him to be in that position. For these reasons, and based on the Court's *in camera* review of the emails in question, the Court finds that Scottsdale has not satisfied its burden of establishing that the attorney-client privilege exists.

**IT IS, THEREFORE, ORDERED** that the Motion to Compel Discovery [Doc. #143] filed by Maxfield & Oberton Holdings is hereby **granted** as to the documents listed as No. 43 and No. 59 is Scottsdale's Privilege Log, and those documents should be produced on or before November 21, 2016.

**IT IS SO ORDERED**, this the 18th day of October, 2016.


                                     /s/Linda R. Anderson
                         UNITED STATES MAGISTRATE JUDGE